IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| ANDRE DESCHAMPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cv. No.      3:12-cv-0086 |
| | ) | Judge Sharp / Magistrate Judge John S. |
| BRIDGESTONE AMERICAS, INC. | ) | Bryant |
| SALARIED EMPLOYEES RETIREMENT | ) | |
| PLAN, BRIDGESTONE AMERICAS | ) | |
| HOLDING, INC., and BRIDGESTONE | ) | |
| AMERICAS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**To: The Honorable Kevin H. Sharp, District Judge**

<u>**Report and Recommendation**</u>

Presently pending before the Magistrate Judge is the plaintiff's Motion to Amend his complaint. For the reasons explained below, the undersigned **RECOMMENDS** that the plaintiff's motion be **GRANTED in PART** over the defendants' objections.

## I. <u>INTRODUCTION AND BACKGROUND</u>

According to the amended complaint (Docket Entry ("DE") 23-1.), Andre Deschamps ("Plaintiff"), is a mechanical engineer first employed by defendant Bridgestone on August 8, 1983 and eligible to participate in Bridgestone's retirement plan ("the Plan") at that time.[1] (Complaint, DE 23-1, p. 3 ¶¶ 10-11.) Given no interruption in service, Plaintiff's date of hire would establish his total years of service in calculating the pension benefits to which he will be entitled upon retirement. (Complaint, DE 23-1, p. 3 ¶ 11.) Plaintiff transferred from defendant

---

1. It is presumed for the purposes of this Report and Recommendation that Plaintiff began participating in the Plan as of August 8, 1983, Plaintiff began accruing benefits at that time, and that Plaintiff's accrued benefits reflected on the periodic benefit notices mandated under Title I, Part I of ERISA were initially based upon the August 8, 1983 date.

Bridgestone's Joliette, Quebec tire plant ("Joliette Plant") to its Wilson, North Carolina tire plant ("Wilson Plant") on August 1, 1993, and subsequently to defendant Bridgestone's Nashville, Tennessee Corporate Offices ("Corporate Offices") in 2004. (Complaint, DE 23-1, pp. 3-4 ¶¶ 12-13.)

According to Plaintiff, one factor weighing heavily in his decision to leave the Joliette Plant was whether his plan participation date would remain August 8, 1983. (Complaint, DE 23-1, p. 4 ¶ 14.) Executives at both the Wilson Plant and the Corporate Offices assured Plaintiff, both verbally and in writing, that his date of participation would remain the date he originally became eligible under the Plan, as it existed at that time, should he transfer to the Wilson Plant. (Complaint, DE 23-1, pp. 4-5 ¶¶ 15-17.) Based upon these assurances, Plaintiff accepted defendant Bridgestone's offer of intra-company transfer. (Complaint, DE 23-1, p. 5 ¶¶19-20.)

Consistent with the understanding of the parties, August 8, 1983 remained Plaintiff's participation date from the time he moved to the Wilson Plant until 2010. (Complaint, DE 23-1, pp. 5-7 ¶¶ 21-25, p. 8 ¶¶ 31-32.) The periodic benefit notices that Plaintiff received and the benefit calculator eventually adopted by the Plan continued to reflect Plaintiff's participation date as August 8, 1983. (Complaint, DE 23-1, pp. 5-6 ¶¶ 22-25; p. 8 ¶¶ 31-32.) However, while using the Plan's benefit calculator in July of 2010, Plaintiff noticed that his participation date had been amended to August 1, 1993. (Complaint, DE 23-1, p. 8 ¶ 32.)

Plaintiff made inquiries of defendant Bridgestone's Vice President of Labor Relations about the change, and then initiated an appeal with the Plan Administrator on September 30, 2010, according to the Plan's terms. (Complaint, DE 23-1, p. 8 ¶ 33-34.) Accordingly, the Plan's Appeal Board ruled that Plaintiff's effective eligibility and participation date was the date he

began working in the Wilson Plant—August 1, 1993. (Complaint, DE 23-1, p. 9 ¶ 35.) Plaintiff's second appeal was denied on March 14, 2011. (Complaint, DE 23-1, p. 9 ¶ 37.)

After exhausting his administrative remedies under the plan, Plaintiff initiated the instant action in the U.S. District Court for the Middle District of Tennessee on January 19, 2012. (DE 1.) Plaintiff alleges that, collectively, defendants Bridgestone Americas, Inc. Salaried Employees Retirement Plan, Bridgestone Americas Holding, Inc., and Bridgestone Americas Inc. ("Defendants") violated the substantive provisions of the Employee Retirement Income Security Act ("ERISA"). According to Plaintiff's complaint, Defendants' conduct amounts to: 1) constructive fraud; 2) violation of ERISA's anti-cutback provisions (29 U.S.C. 1054(g)(1), § 204(g) of the Internal Revenue Code); and 3) a breach of fiduciary duty under the plan. (Complaint, DE 23-1, pp. 9-14.)

Subsequent to the ruling in *Gardner v. Heartland Partners, LP*, 715 F.3d 609 (6th Cir. 2013), Plaintiff now seeks to amend his complaint to include supplemental claims for breach of contract under state law.[2] (Plaintiff's Memorandum in Support of the Motion to Amend ("P. Motion"), DE 23, p. 1.) According to Plaintiff, while he "continues to believe that ERISA is the appropriate vehicle" for recovery in this case (P. Motion, DE 23, p. 2), the holding in *Gardner* "change[s] existing law regarding ERISA preemption, and this nuanced change opens the door

---

[2]    While it is clear that federal law governs Plaintiff's claims related to ERISA, the Magistrate Judge makes no finding in regard to what law governs Plaintiff's breach of contract claims. Tennessee follows the doctrine of *lex loci contractus*. *See Messer Griesheim Indus. V. Cryotech of Kingsport, Inc.*, 131 S.W. 3d 457, 474-75 (Tenn. 2003) (citing *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W. 2d 465, 467 (Tenn. 1973)); *See also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313, U.S. 487, 496 (1948) (holding that "[t]he conflict of law rules to be applied by [federal courts] must conform" to the laws of the state in which they sit). Any contract that arose between Plaintiff and Defendants at the time of his move to the Wilson Plant will be governed by "the law of the place where it was entered into unless [such contract contains a] reference to the law of some other state." *Ohio Cas. Ins. Co.*, 493 S.W.2d at 467 (citing *Deaton v. Vise*, 210 S.W.2d 665, 668 (Tenn. 1948)). At the time of contract formation, Plaintiff resided in and was presumably a citizen of Canada. The object of that contract was Plaintiff's employment in North Carolina. Thus, it would appear that Tennessee would defer to either Canadian or North Carolina law absent some intervening fact or a choice of law provision. For this reason the Magistrate Judge simply refers to state law.

for [him] to recover the pension benefits Defendants wrongfully denied him through a state-law cause of action." (P. Motion, DE 23, p. 1.)

Defendants respond that any attempt to amend at this late date is unduly prejudicial. (Defendants' Response ("Defendants R."), DE 26, p. 1-2.) Further, Defendants argue that pursuing breach of contract claims here would be futile. (Defendants' R., DE 26, p. 2.)

## II. <u>ANALYSIS</u>

### A. Amending the Complaint

Under the rules of civil procedure applicable in federal courts, a party is permitted to amend a complaint once as a matter of right so long as the proposed amendment falls within 21 days of the original filing. Fed. R. Civ. P. 15(a)(1). Beyond these 21 days, the decision to grant a motion to amend falls squarely within the discretion of the court. *See Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994). However, "[u]nder Rule 15(a), leave to amend a pleading 'shall be freely given when justice so requires.'" *Id.* (quoting Fed. R. Civ. P. 15(a)). In determining whether to grant leave to amend a complaint, the United States Court of Appeals for the Sixth Circuit has instructed district courts to consider "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Id.* One of two elements deemed "critical" is "substantial prejudice to the opposing party." *Id.*

Although Plaintiff's motion comes nearly 8 weeks prior to the conclusion of discovery, Plaintiff contends that no prejudice will result from this amendment. According to Plaintiff, "the proposed amendment does not involve any additional allegations of fact . . . [and] will not require additional discovery." (P. Motion, DE 25, p. 4.) While Defendants claim prejudice due to the late filing, they offer no specifics as to what prejudice this additional claim will cause.

(Defendants' R., DE 26, pp. 3-4.) Further, Defendants do not dispute Plaintiff's claim that no additional discovery will be required. (Defendants R., DE 26, pp. 3-4.)

Thus, the Magistrate Judge finds that Defendants will not be unduly prejudiced by granting Plaintiff's motion to amend.

## B. Futility of the Proposed Amendment

While Plaintiff does not clearly state the exact nature of his breach of contract claims, a fair reading of Plaintiff's ERISA claims permit the inference that maintenance of his original participation date is an integral term of Bridgestone's offer of employment at the Wilson Plant; a term that induced Plaintiff to relocate there from Canada. Amending that date allegedly constitutes a breach of the terms of that agreement. Plaintiff contends that, under *Gardner's* reasoning, his breach of contract claims are independent of his ERISA claims, and, thus, may proceed. (P. Motion, DE 25, p. 1.)

Defendants do not argue that the assurances provided to Plaintiff prior to his intra-company transfer in 1993 were merely clarifications of his entitlement to benefits under the Plan as it existed in 1993. Nor do Defendants deny that the assurances were made or that they formed an integral part of the terms of Plaintiff's intra-company transfer. Rather, Defendants argue that *Gardner* pertains to the court's removal jurisdiction and provides no support for Plaintiff's claims. (Defendant's R., DE 26, p. 6.) In regard to the preemptive effect of ERISA, Defendants contend that *Gardner* pertains to "complete" preemption under 29 U.S.C. § 1132(a)(3)—ERISA § 502(a)(3)—and that the *Gardner* holding "is inapplicable to the preemptive effect of ERISA 514"—29 U.S.C. § 1144. (Defendants' R., DE 26, p. 6.)

ERISA represents one of those rare federal statutes that "wholly displaces [a] state-law cause of action through complete preemption." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207

(2004) (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)).  As such, where an individual brings suit in state court on claims founded upon preempted state law, the claim "is in reality based upon federal law" and may be removed to federal court even though the plaintiff's pleading does not fairly raise a federal question.   *Davila*, 542 U.S. at 208 (quoting *Anderson*, 539 U.S. at 8).   ERISA's preemptive effect extends to "state laws, including common law contract claims, to the extent they 'relate to any employee benefit plan' as defined by the statute." *Reedstrom v. Nova Chems Co.*, 96 Fed. Appx. 331, 334 (6th Cir. 2004) (*quoting Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–8 (1987)).

Federal law may preempt state law where Congress includes an express provision clearly and unambiguously preempting state law.  *See Gade v. Nat. Solid Wastes Management Ass'n*, 505 U.S. 88, 98 (1992).  Additionally, despite a general presumption against preemption, *N.Y. State Conf. of Blue Cross Blue Shield Plans v. Travellers Ins. Co.*, 514 U.S. 645, 655-56 (1995), preemption may be implied where a federal scheme is "so pervasive as to make reasonable the inference that Congress [intended to cover the field, leaving] no room for the States to supplement it . . . or where State law [conflicts with the federal scheme and] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade*, 505 U.S. at 98. (internal quotations and citations omitted).  Both forms of preemption are evidenced within ERISA.

### 1.  Conflict Preemption under 29 U.S.C. § 1132 or ERISA §502

Section 502 of ERISA represents "an integrated system of procedures for enforcement" of ERISA claims.  *Davila*, 542 U.S. at 208.  Section 502 defines the entities amenable to suit, the theories under which ERISA claims may proceed, and remedies available to claimants who succeed.  *See* 29 U.S.C. § 1132.  Strict adherence to these provisions controlling the course of

ERISA litigation is necessary "to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Id.* Thus, for the purposes of preemption under § 502, ERISA wholly displaces state law claims that relate to—duplicate, supplement, or supplant—§ 502's comprehensive remedial scheme. *Id.* at 209-10. It is this complete displacement that grants federal court jurisdiction and permits removal where a plaintiff pursues claims contrary to § 502 in state tribunals. *Id.* at 208.

However, the complete preemptive effect of § 502 is not in itself complete. As the court in *Gardner* found, ERISA § 502 does not preempt every state law claim related to ERISA benefits. Rather, ERISA's preemptive force acts on those state law claims that relate directly to the rights and benefits derived from an ERISA plan, independent of any other legal obligation. *See Gardner*, 715 F.3d at 613 (finding that state law claims fall "within the scope of § 1132(a)(1)(B) [where] (1) the plaintiff complains about the denial of benefits to which he is entitled only because of the terms of an ERISA-regulated employee benefit plan; and (2) the plaintiff does not allege the violation of any legal duty (state or federal) independent of ERISA or the plan terms.") (quoting *Davila*, 542 U.S. at 210).

In *Gardner*, the plaintiff sued his former employers under Michigan state law for tortious interference with the terms of his ERISA plan. *Gardner*, 715 F.3d at 611-613. The *Gardner* court extended *Davila's* reasoning to find that the defendants' duty not to interfere with the terms of the ERISA plan arose under Michigan tort law rather than under § 502 itself. *Id.* at 615. The duty not to interfere with the plan was independent from—not "derived from, or conditioned upon[—]the terms of the [Plan]," and did not require the interpretation of the Plan's substantive terms. *Id.* at 614. In so holding, the *Gardner* court relied heavily on two decisions rendered by the United States Court of Appeals for the Second Circuit: *Arditi v. Lighthouse International*,

676 F.3d 294 (2d Cir. 2012) and *Stevenson v. Bank of N.Y.*, 609 F.3d 56 (2d Cir. 2010).

In *Arditi*, the plaintiff's employment was governed by a formal employment contract that "recited Lighthouse's obligations to the plaintiff under Lighthouse's pension plan." *Gardner*, 715 F.3d at 613. Thus, any rights or benefits expressed in Arditi's employment contract were derivative of the pension plan—the employment contract created no independent legal obligation—and resolution of the contract claim would require interpretation of the terms of the Plan itself. *Id.* Under *Davila's* reasoning, Arditi's breach of contract claim was preempted under ERISA § 502. *Gardner*, 715 F.3d at 613. Conversely, *Stevenson's* breach of contract claim was independent of the defendant's ERISA plan.

In *Stevenson*, the plaintiff was asked to transfer from his employer's bank ("the Bank") to "an affiliated bank in Switzerland." *Gardner*, F.3d at 614. In doing so, Stevenson would no longer be eligible to participate in the Bank's pension plan under the Plan's express terms. *Id.* However, "the Bank promised to maintain Stevenson's status as a plan participant while he was in Switzerland." *Id.* According to the Second Circuit, the obligation imposed by this promise was independent of—"did not derive from"—the Plan and was entirely contrary to the Plan's terms. *Id.* Further, resolution of Stevenson's claims did not require interpretation of the Plan terms, but, rather, application of those terms. *Id.* The measure of damages to which Stevenson was entitled would be established by the amount of pension benefits that would have accrued under the terms of the Plan had the Bank fulfilled its promise. *Id.* Extension of this reasoning to Plaintiff's claims dictate that they are not completely preempted by § 502.

As to the Plan, Bridgestone Americas, Inc. Salaried Employees Retirement Plan, Plaintiff's breach of contract claims fall outside of the scheme established under § 502. Plaintiff's participation date, and, thus, his entitlement to Plan benefits derives solely from the

terms of the Plan as it stood in 1993. Further, any resolution of Plaintiff's claims in regard to the Plan will necessitate interpretation of the Plan's substantive terms. Thus, according to *Gardner*, Plaintiff's breach of contract claims in this context conflict with § 502's integrated remedial provisions and are preempted. Plaintiff's claims in regard to any contract that arose outside of the Plan, however, are not likewise preempted.

As in *Stevenson*, any obligations created by Bridgestone Americas Holdings, Inc. or Bridgestone Americas, Inc. ("Corporate Defendants") in this context are not derivative of the Plan.[3] Rather, they arise from the promise, contrary to the Plans' terms, to maintain Plaintiff's participation date. Contrary to Defendants' assertions, Plaintiff's breach of contract claims will not obligate the Plan to "a different ERISA date [than] the one in the Plan" (Defendants' M., DE 26, p. 8.), but, rather, will obligate the Corporate Defendants to the monetary value of any benefits that should have accrued under the terms of the Plan had he participated in the Plan as the Corporate Defendants promised. Further, a decision on Plaintiff's breach of contract claims in this context will not necessitate an interpretation of the Plan language. To the contrary, just as in *Stevenson*, a decision here will necessitate an application of the Plan terms to determine the amount of damages to which Plaintiff is entitled.

Thus, to the extent that the promises and assurances made by the Corporate Defendants prior to Plaintiff's intra-company transfer are independent of the Plan, the Magistrate Judge finds that they are not preempted under ERISA § 502.

### 2. Express preemption under 29 U.S.C. § 1144 or ERISA § 504

In enacting ERISA, Congress intended to implement an expansive national regulatory

---

[3] The Magistrate Judge notes here that the nature and effect of the assurances given or promises made by the Corporate Defendants prior to Plaintiff's intra-company transfer are critical to this issue. If those assurances or promises are deemed to be a clarification of Plaintiff's benefits under the Plan as it stood in 1993, then the analysis that follows would yield a different result. Those assurances would not be independent of the Plan's terms, and, thus, would be preempted by § 502.

scheme to govern the treatment of employee benefit plans. *Davila*, 542 U.S. at 208. As such, Congress included § 504 which "supersede[s] any and all State laws insofar as they may now or hereinafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Under ERISA, State laws are any "laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). This language is "deliberately expansive." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2002.)

Initially, in keeping with Congress' expansive intent, courts applied § 504 to preempt any state law claims that had "a connection with or reference to [an ERISA] plan." *Thiokol Corp. v. Roberts*, 76 F.3d 751, 754 (6 th Cir. 1993) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983)). More recently, however, due in part to the presumption against preemption discussed above, courts in this Circuit require state law claims to have an "effect on employee benefits plan[s that] is more than tenuous, remote or peripheral" for preemption to apply. *Marks*, 342 F.3d at 452.

As Defendants assert, a state law claim has more than a "tenuous, remote, or peripheral" impact on an ERISA plan where it purports to "(1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Guyan Int'l., Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793, 801 (6th Cir. 2012). As discussed previously, maintenance of Plaintiff's breach of contract claims against the Corporate Defendants is not related to the Plan itself, and, thus, is not preempted by § 504.

If Plaintiff is ultimately denied benefits under the Plan but prevails against the Corporate Defendants, no "mandate" will arise that affects the "structure . . . or administration" of the Plan

itself. Neither will any monetary damages established by the application of the Plan language impose an obligation on the Plan. Rather, any "alternate enforcement mechanism" provided by Plaintiff's breach of contract claims is related to the obligations arising from the contract between the Corporate Defendants and Plaintiff. Thus, satisfaction of those obligations is the responsibility of the Corporate Defendants rather than the Plan. Finally, Plaintiff's breach of contract claims against the Corporate Defendants will do nothing to "bind [the Corporate Defendants] or plan administrators to particular choices" regarding *any* Plan administrative practices. Rather, a decision in this context will only bind the Corporate Defendants to any promises that they made to induce Plaintiff to accept their offer of intra-company transfer.

Thus, because Plaintiff's breach of contract claims are not "related to" Defendants' ERISA plan, the Magistrate Judge finds that they are not preempted under ERISA § 504.

As the preceding analysis indicates, Plaintiff's state law breach of contract claims are not preempted by federal law, and, as such, these claims do not arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Further, the parties are nondiverse divesting the court of subject matter jurisdiction under 28 U.S.C. § 1332(a). The court may only cognize these as supplemental to Plaintiff's ERISA claims under 28 U.S.C. § 1367.

## C. Supplemental Jurisdiction

Supplemental jurisdiction over pendent state law claims is warranted where those claims are "so related to claims in the action within such original jurisdiction that they form a part of the same case or controversy." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting 28 U.S.C. § 1367(a)). However, "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right," *Mine workers v. Gibbs*, 383 U.S. 715, 726 (1966), and, as such, a multiplicity of factors must be considered when deciding whether to assert supplemental jurisdiction over

them. These factors include "judicial economy, convenience, fairness, and comity," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), as well as the "avoidance of multiplicity of litigation." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.3d 1178, 1182 (6th Cir. 1993). A consideration of these factors weighs in favor of jurisdiction here.

Of the factors listed above, convenience and comity lend little weight to the decision. Both parties are domiciled in Nashville, Tennessee. Any inconvenience imposed by litigation of these claims in federal court is equally shared. Further, Plaintiff's ERISA claims dominate the dispute and little offense will attend state tribunals should the district court assert jurisdiction over those claims. Contrastingly, judicial economy, fairness, and avoidance of multiplicity of litigation weigh heavily in favor of appending Plaintiff's state claims to his ERISA claims.

As Plaintiff points out, both his ERISA claims and his breach of contract claims "derive from a common nucleus of operative facts." *Gibbs*, 383 U.S. at 725. A decision as to either necessitates a determination of the existence and obligatory effect of the Corporate Defendants' promise regarding Plaintiff's benefit eligibility date. Further, as the preemption analysis indicates, Plaintiff's claims are mutually exclusive. Plaintiff may recover on his breach of contract claims only if he is not eligible for benefits under the terms of the Plan.

Thus, the Magistrate Judge finds that supplemental jurisdiction over Plaintiff's breach of contract claims is warranted.

### III. CONCLUSION

The Magistrate Judge finds that Plaintiff's state law breach of contract claims: 1) are preempted under ERISA § 502 as they pertain to the Plan; 2) are not preempted under ERISA §§ 502, 504 as they pertain to the Corporate Defendants; 3) and that assertion of supplemental jurisdiction over those claims is warranted in the instant matter.

## IV. <u>RECOMMENDATION</u>

For the reasons stated above, the undersigned recommends that the plaintiff's Motion to Amend his complaint be **GRANTED in PART and DENIED in Part**.

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 28th day of March, 2014.

/s/John S. Bryant
John S. Bryant
Magistrate Judge